UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| SARA M., <br><br>   Plaintiff, <br><br>v. <br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br>   Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:22-cv-00625 <br><br> Magistrate Judge Daphne A. Oberg |

  Plaintiff Sara M.[1] filed this action for judicial review[2] of the Acting Commissioner of the Social Security Administration's decision denying her applications for disability insurance benefits under Title II[3] and supplemental security income under Title XVI of the Social Security Act.[4] The Administrative Law Judge ("ALJ") denied Ms. M.'s applications, finding she did not qualify as disabled.[5] Ms. M. argues the ALJ erred by finding fibromyalgia was not a medically determinable impairment.[6]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by her first name and last initial only.

[2] (*See* Compl., Doc. No. 2; Opening Br., Doc. No. 15.)

[3] 42 U.S.C. §§ 401–434.

[4] *Id.* §§ 1381–1385.

[5] (Certified Tr. of Admin. R. ("Tr.") 17–32, Doc. No. 12.)

[6] (Opening Br. 4, Doc. No. 15.)

1

The court[7] has carefully reviewed the record and the parties' briefs.[8] Because Ms. M. fails to support her claim that she meets the criteria for establishing fibromyalgia as a medically determinable impairment with record evidence, the ALJ properly considered whether Ms. M.'s reported fibromyalgia met this criteria, and substantial evidence supports his decision, the Commissioner's determination is affirmed.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine if substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards.[9] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal."[10]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[11] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[12] Substantial evidence is "such relevant evidence as a

---

[7] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 10.)

[8] The appeal is determined on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[9] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[11] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[12] *Id.* at 1154 (internal quotation marks omitted).

reasonable mind might accept as adequate to support a conclusion."[13] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[14] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[15]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[16] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[17]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has a residual functional capacity to perform past relevant work; and

---

[13] *Id.* (internal quotation marks omitted).

[14] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[15] *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[16] 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

[17] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

    5) she has a residual functional capacity to perform other work in the national economy considering her age, education, and work experience.[18]

The claimant has the burden, in the first four steps, of establishing disability.[19] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work.[20]

## PROCEDURAL HISTORY

In June 2020, Ms. M. applied for disability insurance benefits and supplemental security income.[21] After an administrative hearing,[22] the ALJ issued a decision on February 15, 2022, finding Ms. M. not disabled and denying benefits.[23] At step two of the sequential evaluation, the ALJ found Ms. M. had the severe impairments of somatic pain disorder, degenerative disc disease (of the lumbar and cervical spine), sacroiliac joint dysfunction, hearing impairment, anxiety disorder, and severe alcohol use disorder.[24] At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[25]

---

[18] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[19] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[20] *Id.*

[21] (*See* Tr. 216–24.)

[22] (*See* Tr. 39–70.)

[23] (Tr. 17–32.)

[24] (Tr. 20.)

[25] (Tr. 21–22.)

The ALJ found Ms. M.'s fibromyalgia to be non-medically determinable, as it was unsupported by "appropriate medical evidence."[26] Specifically, the ALJ noted that no physical examinations revealed the "tender points" or "other supportive clinical findings" as enumerated in Social Security Ruling 12-2p.[27] He also observed that the medical record did not rule out other disorders, even though Ms. M. had numerous orthopedic impairments which could cause her symptoms.[28]

The ALJ found Ms. M. had the residual functional capacity ("RFC")[29] to perform light work, with significant additional exertional and functional limitations.[30] Based on this RFC, the ALJ found Ms. M. unable to perform her past relevant work.[31] But after considering the testimony of a vocational expert, the ALJ found Ms. M. capable of performing other jobs existing in significant numbers in the national economy.[32] Therefore, the ALJ found Ms. M. not disabled and denied her claims.[33]

---

[26] (Tr. 21 (quoting Soc. Sec. Ruling, 12-2p, 2012 SSR LEXIS 1, at *3).)

[27] (Tr. 21.)

[28] (*See* Tr. 21.)

[29] A claimant's RFC is the most she can do in a work setting considering her limitations. *See* 20 C.F.R. § 404.1545(a)(1); *see also* Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *1. In assessing RFC, the ALJ considers all medically determinable impairments and all relevant medical and other evidence in the record. *See* 20 C.F.R. § 404.1545(a)(2)–(3).

[30] (*See* Tr. 23.)

[31] (Tr. 30.)

[32] (Tr. 31.)

[33] (Tr. 31–32.)

The Appeals Council denied Ms. M.'s request for review,[34] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Ms. M. raises a single claim of error; she argues the ALJ erred by finding fibromyalgia was not a medically determinable impairment. Specifically, Ms. M. argues the ALJ improperly applied Social Security Ruling 12-2p and misrepresented the record evidence.[35] However, Ms. M. fails to support her claim that she met the criteria for establishing fibromyalgia as a medically determinable impairment with record evidence. Additionally, the record shows the ALJ properly considered whether Ms. M.'s reported fibromyalgia met these standards and his decision is supported by substantial evidence. Accordingly, the Commissioner's determination is affirmed.

At step two of the sequential evaluation, Ms. M. had the burden to prove her reported fibromyalgia was a medically determinable impairment.[36] To be medically determinable, an impairment "must be established by objective medical evidence from an acceptable medical source."[37] For fibromyalgia to qualify, it must be diagnosed by a physician and the diagnosis must be supported by sufficient medical evidence.[38] This means the evidence must satisfy the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria.[39] Because Ms. M. "concedes

---

[34] (Tr. 1–6.)

[35] (Opening Br. 4–10, Doc. No. 15.)

[36] *See Hawkins v. Cater*, 113 F.3d 1162, 1169 (10th Cir. 1997).

[37] 20 C.F.R. § 404.1521.

[38] *See* Soc. Sec. Ruling 12-2p, 2012 SSR LEXIS 1, at *3–4.

[39] *Id.* at *4.

that the evidence of record does not establish that the 1990 criteria are met,"[40] only the 2010 criteria are at issue. Under these criteria, fibromyalgia will be considered a medically determinable impairment only if the evidence shows the claimant has:

(1) "[a] history of widespread pain";

(2) "[r]epeated manifestations of six or more" fibromyalgia "symptoms, signs, or co-occurring conditions," particularly, "fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and

(3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."[41]

As an initial matter, because the ALJ referenced "tender points" when concluding the evidence did not support fibromyalgia as a medically determinable impairment, Ms. M. argues he only considered the 1990 criteria.[42] But the ALJ did not only mention tender points; his analysis shows he considered the 2010 criteria also. First, the ALJ noted Ms. M.'s "alleged fibromyalgia is unsupported by 'appropriate medical evidence,'" citing to Social Security Ruling 12-2p and Dr. Madeline O'Sullivan's report and diagnosis.[43] Ms. M. argues the ALJ specifically failed to address whether she met her burden to show evidence of repeated manifestations of six

---

[40] (Opening Br. 5, Doc. No. 15.)

[41] Soc. Sec. Ruling 12-2p, 2012 SSR LEXIS 1, at *8–9 (internal citations omitted).

[42] (*See* Opening Br. 6, Doc. No. 15.) The 1990 criteria require, among other things, a finding of at least eleven bilateral, positive, tender points on physical examination. Soc. Sec. Ruling 12-2p, 2012 SSR LEXIS 1, at *5. Tender points are not referenced in the 2010 criteria.

[43] (Tr. 21 (citing Tr. 1376).)

7

or more fibromyalgia symptoms, signs, or co-occurring conditions.[44] But the ALJ's reference to the lack of "other supportive clinical findings" supporting a fibromyalgia diagnosis reflects his finding that Ms. M. did not meet her burden under this 2010 criteria.[45] Under the 1990 criteria, a lack of tender points is sufficient to find the fibromyalgia diagnosis unsupported; the ALJ need not consider other clinical findings.[46] Other clinical findings are only relevant to the 2010 criteria.[47] In this case, the ALJ's reference to tender points shows he considered the 1990 criteria and his reference to "other supportive clinical findings" shows he considered the 2010 criteria. Nothing indicates he considered one to the exclusion of the other.[48]

The Commissioner contends Ms. M. cannot prevail because she failed to provide medical evidence from Dr. O'Sullivan meeting all three 2010 section criteria.[49] In other words, the Commissioner contends the underlying clinical findings must be documented by the same physician who diagnosed Ms. M. with fibromyalgia.[50] Ms. M. argues this position lacks support.[51] Whether the same physician who makes the diagnosis must also document the underlying medical evidence necessary to establish fibromyalgia as medically determinable is

---

[44] (Reply Br. 3, Doc. No. 25.)

[45] (Tr. 21.)

[46] *See* Soc. Sec. Ruling 12-2p, 2012 SSR LEXIS 1, at *5–7.

[47] *See id.* at *8–9 (requiring an analysis of other fibromyalgia "symptoms, signs, or co-occurring conditions").

[48] Presumably, if the ALJ had not mentioned tender points, Ms. M. would argue he considered the 2010 criteria to the exclusion of the 1990 criteria.

[49] (*See* Answer Br. 6–7, Doc. No. 24.)

[50] (*See id.*)

[51] (*See* Reply Br. 2, Doc. No. 25.)

unclear from the language of Social Security Ruling 12-2p. The ruling does reference "the physician" singularly throughout, indicating the ALJ cannot rely upon "the physician's diagnosis alone," the evidence must show "the physician" reviewed the claimant's medical history—and "the physician's treatment notes" and "the physician's assessment over time" must be considered.[52] However, it is unnecessary to determine whether the same physician who makes the diagnosis must document the necessary clinical findings because Ms. M. failed to point to evidence in the record—from any physician—sufficient to meet the 2010 criteria.

      <u>Criterion One</u>. The first section of the 2010 criteria requires a "history of widespread pain," which means "pain in all quadrants of the body" and "axial skeletal pain," persisting for at least three months.[53] Ms. M. relies on and cites only to Dr. O'Sullivan's report from October 2021 in arguing this requirement was met.[54] While Dr. O'Sullivan opined generally that Ms. M. met the ACR preliminary diagnostic criteria and suffered from "widespread pain" for more than three months, her treatment records do not specifically indicate whether Ms. M.'s pain was within all quadrants and the axial skeleton.[55] Dr. O'Sullivan also does not reference medical records from other providers showing these findings were made. She notes only that Ms. M. saw a mental health provider and a pain management provider, without mentioning anything more.[56] This does not satisfy Social Security Ruling 12-2p, which requires a claimant's diagnosis be

---

[52] Soc. Sec. Ruling 12-2p, 2012 SSR LEXIS 1, at *3–4.

[53] *Id.* at *8 (citing *id.* at *5).

[54] (*See* Opening Br. 8, Doc. No. 15.)

[55] (*See* Tr. 1374.)

[56] (Tr. 1376.)

9

supported by appropriate medical evidence.[57] And Ms. M. did not point to any other record medical evidence sufficient to satisfy this pain criterion, instead relying solely on Dr. O'Sullivan's treatment notes.

Criterion Two. The next section of the 2010 criteria requires "repeated manifestations" of six or more fibromyalgia "symptoms signs or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome."[58] Ms. M. again cites only Dr. O'Sullivan's October 2021 treatment note in support of her argument that the second criterion is met; she points to no other record evidence.[59] This is problematic where Dr. O'Sullivan's note is insufficient to meet the criterion. The treatment note indicates Ms. M. had symptoms of fatigue, diarrhea, constipation, sleep disturbance, and suffered from hearing loss.[60] It also notes Ms. M. was "nervous/anxious."[61] While fatigue, constipation, diarrhea, nervousness, waking unrefreshed, and hearing difficulties are listed as potential signs or symptoms of fibromyalgia, along with anxiety disorder,[62] Dr. O'Sullivan's note contains no clinical findings that these symptoms were repeatedly manifested. Dr. O'Sullivan only saw Ms. M. twice (July and October

---

[57] *See* Soc. Sec. Ruling 12-2p, 2012 SSR LEXIS 1, at *3–4.

[58] *Id.* at *8.

[59] (*See* Opening Br. 8, Doc. No. 15.)

[60] (*See* Tr. 1375.)

[61] (*See* Tr. 1375.)

[62] *See* Soc. Sec. Ruling 12-2p, 2012 SSR LEXIS 1, at *8 n.9, n.10, n.11.

2021).[63] And the treatment notes from July do not reference all of these same symptoms.[64] In other words, these treatment notes do not show the repeated, longitudinal manifestations required by criterion two. Nor does Dr. O'Sullivan reference or explain how medical records from other providers show underlying findings sufficient to meet this criterion.

Instead, Ms. M. makes several blanket claims in support of criterion. For instance, she asserts "fibromyalgia symptoms and signs can be found almost anywhere in the record."[65] But Ms. M. makes no attempt to identify what symptoms appear where in the record or how they support the second criterion. This approach is insufficient.[66] As another example, Ms. M. argues "[n]umerous treating and consulting physicians have diagnosed fibromyalgia in this case."[67] She later refers back to this statement: "As noted above, Plaintiff has been diagnosed with fibromyalgia by numerous medical professionals."[68] But nowhere does Ms. M. cite to any of these alleged diagnoses—other than Dr. O'Sullivan's. And while the record shows a number of references from other providers regarding the need to rule out or assess the possibility of fibromyalgia, the sole fibromyalgia diagnosis comes from Dr. O'Sullivan.[69] Where Dr.

---

[63] (*See* Tr. 1362–68, 1373–79.)

[64] (*See* Tr. 1362–68 (no reference to fatigue, constipation, or sleep disturbance).)

[65] (Opening Br. 8, Doc. No. 15.)

[66] *See Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (holding a "perfunctory presentation" of an undeveloped argument constituted waiver).

[67] (Opening Br. 3, Doc. No. 15.)

[68] (*Id.* at 5.)

[69] (*See, e.g.*, Tr. 406 ("Wonder about Fibromyalgia."); Tr. 509 (same); Tr. 783 (same); Tr. 600 ("Initially considered fibromyalgia."); Tr. 922 (same); Tr. 629 ("perhaps fibromyalgia"); Tr. 919 ("discuss fibromyalgia medication"); Tr. 935 ("Hasn't had a dx of fibromyalgia.").)

O'Sullivan's treatment notes do not show criterion two is met, and Ms. M. failed to point to other record evidence satisfying criterion two, the ALJ did not err in finding a lack of "other supportive clinical findings."

Criterion Three.  The third criterion from the 2010 guidelines requires "[e]vidence that other disorders that could cause these repeated manifestations of symptoms" from criterion two "were excluded."[70]  The ALJ definitively found the record lacked testing which excluded other disorders, as required.[71]  While Ms. M. concedes Dr. O'Sullivan never explicitly excluded other disorders as causes of her symptoms, she references the doctor's statement that Ms. M.'s symptoms had "no other obvious etiology."[72]  But a passing statement about the lack of other obvious etiology does not constitute evidence other disorders were excluded.  There is no indication in her treatment notes that Dr. O'Sullivan conducted testing to rule out other conditions as the cause of the symptoms—or that she reviewed Ms. M.'s medical records for purposes of excluding other conditions.

Ms. M. argues the fact that the ALJ found only her spinal impairments to be severe demonstrates the other disorders which could cause her symptoms were excluded—because "the spinal impairments alone do not account" for her pain.[73]  This argument assumes too much.  Under social security rules, an impairment is considered severe if it "significantly limits an

---

[70] Soc. Sec. Ruling 12-2p, 2012 SSR LEXIS 1, at *9.  The 1990 standards also require evidence that other disorders which could cause the symptoms be excluded.  *Id.* at *6.  Accordingly, a failure to provide this evidence means neither the 1990 nor 2010 standards have been met.

[71] (*See* Tr. 21.)

[72] (*See* Opening Br. 9, Doc. No. 15 (quoting Tr. 1374).)

[73] (*See id.*)  Ms. M.'s statement about the ALJ's findings is incorrect.  Even as it refers to purely physical impairments, the ALJ also found Ms. M.'s sacroiliac joint dysfunction to be severe.  (*See* Tr. 20.)

individual's physical or mental abilities to do basic work activities."[74] Just because an orthopedic condition does not qualify as severe under this standard does not rule it out as the source of symptoms.[75] The fact that Ms. M.'s spinal impairments were not the only cause of her pain does not mean fibromyalgia was the sole remaining option. All other conditions which might cause the symptoms would need to be excluded for the third criterion to be satisfied.

Ms. M. also argues that a review of the administrative record shows other conditions were excluded. For instance, she contends the ALJ's conclusion that Ms. M.'s inflammatory markers were normal shows other conditions were excluded.[76] Similarly, she argues the fact that Ms. M. was not diagnosed with a somatic symptom disorder indicates psychological factors were excluded as a source of pain.[77] Again, this assumes too much. First, in addition to finding Ms. M.'s spinal impairment was severe, the ALJ found Ms. M.'s sacroiliac joint dysfunction was severe[78] and he acknowledged Ms. M.'s report that this was the most painful part of her body.[79] In addition, the ALJ found Ms. M. was assessed to have a "region of somatic dysfunction."[80] And she was diagnosed with chronic pain syndrome which was myofascial and mechanical in

---

[74] Soc. Sec. Ruling 96-3p, 1996 SSR LEXIS 10, at *3.

[75] Nonsevere impairments have "no more than a minimal effect on the ability to do basic work activities." *Id.* But this does not mean they cause no symptoms.

[76] (Opening Br. 9–10, Doc. No. 15 (citing Tr. 25).)

[77] (*Id.* at 10 (citing Tr. 26).) The record basis for this argument is not entirely clear, where the ALJ found somatic pain disorder to be a severe impairment, (Tr. 20), and Ms. M was found to have somatic dysfunction, (*see* Tr. 25 (citing Tr. 1027, 1391)).

[78] (*See* Tr. 20.)

[79] (Tr. 24.)

[80] (*See* Tr. 25 (citing Tr. 1027, 1391).)

nature[81]—and had shoulder joint damage and peroneal tendonitis.[82] Yet the record does not show these conditions were ruled out, individually or collectively, as the source of Ms. M's symptoms. This gives credence to the ALJ's finding that Ms. M. had "numerous orthopedic impairments that could be causing her symptoms."[83] Moreover, it does not appear any physician ruled out her social isolation, history of trauma, depression, panic attacks, alcohol disorder, or anxiety disorder as a cause of her subjective pain complaints or other symptoms.[84] Because there is no basis in the record for the ALJ to conclude other disorders which could cause Ms. M.'s symptoms were excluded, the ALJ did not err by finding this criterion not established.

Ms. M. argues the Commissioner improperly supplies post-hoc rationalization for the ALJ's decision. In support of this proposition, Ms. M. relies on *Ann S. v. Kijakazi*.[85] In *Ann S.*, the court criticized the Commissioner's post-hoc rationale where she was unable to point to any analysis by the ALJ of the plaintiff's fibromyalgia under Social Security Ruling 12-2p.[86] The sum total of the ALJ's fibromyalgia discussion was an acknowledgment that the record showed fibromyalgia diagnoses, followed by a conclusion that: "The preponderance of record evidence does not support section II(A) or (B). Thus, the claimant's alleged fibromyalgia is not a

---

[81] (*See* Tr. 26 (citing Tr. 1251).)

[82] (*See* Tr. 20 (citing Tr. 874, 880–81, 1525).)

[83] (Tr. 21.)

[84] (*See generally* Tr. 21, 26.)

[85] No. 2:20-cv-00841, 2022 U.S. Dist. LEXIS 13038, at *11 (D. Utah Jan. 24, 2022) (unpublished).

[86] *See id.* at *12.

medically determinable impairment."[87] At no other time did the ALJ mention fibromyalgia or the criteria for deciding whether it constituted a medically determinable impairment.[88] This conclusory statement, and the ALJ's utter failure to explain the basis for it, left the court unable to meaningfully review the ALJ's determination.[89]

      This case differs greatly from *Ann S.* Here, with reference to Social Security Ruling 12-2p, the ALJ explained fibromyalgia was "unsupported by 'appropriate medical evidence.'"[90] He explained how physical examinations revealed neither the requisite tender points nor other supportive clinical findings.[91] He then noted the lack of evidence of testing to exclude other disorders, as required to find fibromyalgia medically determinable.[92] And the ALJ observed Ms. M. had numerous orthopedic impairments which could cause her symptoms.[93] Later in his decision, the ALJ again mentioned Ms. M.'s claim of fibromyalgia, noting no medical source had observed Ms. M. with signs supporting the impairment.[94] This is a far cry from the ALJ's conclusory statements in *Ann S.* Unlike in *Ann S.*, the ALJ here explained his view of the evidence and the conclusions he drew from it, providing reasoning sufficient for subsequent

---

[87] *Id.* at *7 (quoting the ALJ's decision).

[88] *See id.* at *9.

[89] *See id.* at *12.

[90] (Tr. 21 (quoting Soc. Sec. Ruling, 12-2p, 2012 SSR LEXIS 1, at *3)).

[91] (*See* Tr. 21.)

[92] (*See* Tr. 21.)

[93] (Tr. 21.)

[94] (*See* Tr. 28.)

reviewers to follow.[95] Overall, the ALJ's findings are supported by substantial evidence, as the records provide more than a scintilla of evidence supporting his findings.

## CONCLUSION

For all these reasons, the court AFFIRMS the Commissioner's decision.

DATED this 12th day of September, 2023.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[95] *See Langley*, 373 F.3d at 1119 (requiring the ALJ to explain her decision in a manner that is sufficiently specific to be clear to subsequent reviewers); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").